FILED
2021 Dec-07  PM 03:50
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER R. SHAW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| vs. ) | |
| ) | |
| CREDIT CENTRAL SOUTH, LLC, ) | |
| | |
| Defendant. | |

## COMPLAINT

## I. JURISDICTION

1. This is a suit for employment discrimination instituted pursuant to the Age Discrimination in Employment Act, as amended ("ADEA"), 29 U.S.C. §621 *et seq.,* and Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §2000e *et seq.* The jurisdiction of this Court is based on 28 U.S.C. §1331 and §1343(a)(4).

2. Plaintiff Christopher R. Shaw ("Plaintiff") timely filed his charge of discrimination against defendant Credit Central South, LLC ("Defendant") with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the last act of discriminatory treatment.  Plaintiff has further filed this suit within 90 days after receipt of his right-to-sue letter from EEOC.

## II. PARTIES

3.   Plaintiff is a citizen of the United States over the age of nineteen and a resident of Bessemer, Jefferson County, Alabama.

4.   Defendant is a limited liability company with a principal place of business in Greenville, South Carolina.

## III. FACTS

5.   Plaintiff is male.

6.   In or about 2013, Plaintiff became employed with Defendant.

7.   Defendant provides installment loans through numerous branches throughout the southeast and Texas.

8.   Plaintiff's last position with Defendant was manager of its branch in Bessemer, Alabama.

9.   There were two assistant managers in the Bessemer branch, both female.

10.  Plaintiff and the two assistant managers were the only employees in the branch.

11.  In mid-October of 2020, one of the assistant managers in the branch resigned.

12. After she resigned, some of the branch's customers came to Plaintiff and gave him his business cards, saying that this assistant manager had given them as receipts for loan payments.

13. The branch had receipts forms when a customer made a payment, so giving a customer something other than that to confirm a payment was contrary to company policy and practice.

14. The customers told Plaintiff that this assistant manager had told them that the branch was out of receipt forms and that she was using Plaintiff's business card instead.

15. Plaintiff looked into the payments referenced on the business cards and saw that they had not been posted to the customers' accounts and had not been deposited, which suggested that this assistant manager had pocketed the money.

16. Plaintiff reported the matter to his supervisor, District Manager Joshua Owens.

17. Owens is male in his 40's and became Plaintiff's supervisor in January of 2020.

18. Owens then brought his supervisor, Robbie Blalock, and an auditor to the Bessemer branch, and they reviewed the work this assistant manager had done.

19.  They found that, in addition to taking the payments with the fake receipt of Plaintiff's business card, she had also given renewed and increased loans to customers without obtaining company-required information, such as verification of income.

20.  They figured that she likely had also pocketed some of that money, too.

21.  Whenever any type of loan is made, a second manager must "witness" the loan and make sure everything is in order.

22.  The witnessing manager can be the branch manager or an assistant manager.

23.  When Owens, Blalock, and the auditor found that this assistant manager had given renewed and increased loans to customers without obtaining company-required information, they also found that Tanya Warren, the other assistant manager in the branch, had witnessed these loans and filed them in.

24.  In witnessing these loans, Warren should have caught that the required information had not been verified.

25.  Also, Warren's filing the loans in prevented Plaintiff from knowing anything about them.

26.  On or about October 30, 2020, Owens terminated Plaintiff.

27.  The termination was due to the apparent theft by the assistant manager.

28. Owens said that the reason for Plaintiff's termination was that he should have reviewed everything that this assistant manager had done.

29. This was false and pretextual.

30. As for the fake "receipts," there was no company policy or practice that branch managers review payments taken by assistant managers.

31. No branch managers did that.

32. Owens knew this.

33. As for the increased and renewed loans, as stated above Owens knew that Warren had witnessed the loans and filed them in.

34. So, Owens knew that Warren either had to have seen that the required documentation was missing or that she failed to make an attempt to verify it.

35. Either way, Warren violated company policy in not catching the problems with these loans and Owens knew that.

36. More importantly as it relates to Plaintiff's termination, Owens also knew that Warren's witnessing and filing in the loans without his knowledge prevented him from knowing anything about them.

37. Despite all that, Owens terminated Plaintiff but did not terminate Warren.

38. Plaintiff was 61 years old at the time.

39. Warren was in her late 40's or early 50's.

40.  Plaintiff was replaced with a female.

41.  Plaintiff's replacement is much younger than Plaintiff.

42.  Owens made the decision to place her in Plaintiff's position.

43.  She had been the manager of one of Defendant's smaller branches.

44.  Branch manager bonuses are based on branch sales, so Owens's giving her

Plaintiff's larger branch meant an increase in income for her.

45.  Further, Owens always seemed to favor female employees.

46.  Owens was more conversational and interactive with females than males,

and he was often flirtatious with them.

## IV. <u>CAUSES OF ACTION</u>

### COUNT I

### ADEA

47.   Paragraphs 1-44 above are incorporated by reference.

48.  Defendant was an employer as that term is contemplated under the ADEA

during the events of this case.

49.   Defendant violated Plaintiff's rights under the ADEA by terminating his

employment because of his age.

50.   As a result of the above described discriminatory act, Plaintiff has been

made to suffer lost wages and other benefits.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's actions described herein violated the ADEA;

(ii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate the ADEA;

(iii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating Plaintiff and placing him into the position he would have occupied in the absence of discrimination (or, alternatively, providing front-pay), providing lost back-pay and benefits, and ordering Defendant to pay liquidated damages;

(iv) That the Court award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law and an amount to compensate him for any adverse tax consequences as a result of a judgment in his favor; and

(v)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

## COUNT II

## TITLE VII

51.  Paragraphs 1-46 above are incorporated by reference.

52.  Defendant violated Plaintiff's rights under Title VII by terminating his employment because of his gender.

53.  Plaintiff pleads both a single-motive and mixed-motive theory.

54.  As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and benefits, as well as emotional distress and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i)  That the Court issue an Order declaring that Defendant's actions described herein violated Title VII;

(ii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from continuing to violate Title VII;

(iii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating Plaintiff and placing him into the position he would have occupied in the absence of discrimination (or, alternatively, providing front-pay), providing back-

pay and lost benefits, and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iv) That the Court award Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law and an amount to compensate him for any adverse tax consequences as a result of a judgment in his favor; and

(v)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

Respectfully submitted,

s/ Adam M. Porter
Adam M. Porter
Attorney for Plaintiff
Adam M. Porter, LLC
2301 Morris Avenue, Suite 102
Birmingham, Alabama 35203
Phone: (205) 322-8999
Facsimile: (205) 402-4619
Email: adam@adamporterlaw.com

Plaintiff requests trial by struck jury.

s/ Adam M. Porter
Attorney for Plaintiff